# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HENRY SMITH, | |
| Plaintiff, | Civil Action No. 15-7871 (MCA) (LDW) |
| v. | **REPORT AND RECOMMENDATION** |
| SILGAN CONTAINERS MANUFACTURING CORPORATION, BRYCE BEDFORD, JOHN DOES 1-20 and ABC CORPORATIONS 1-10, | |
| Defendants. | |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is plaintiff Henry Smith's motion to remand this action to the Superior Court of New Jersey, from which it was removed by defendants on grounds of federal law preemption. (ECF No. 8). United States District Judge Madeline Cox Arleo referred this motion to the undersigned for a Report and Recommendation. The Court heard oral argument on March 18, 2016 and reserved decision. Having considered the parties' submissions and arguments, for the reasons set forth herein, and for good cause shown, this Court recommends that plaintiff's motion to remand be **GRANTED**.[1]

---

[1]      There is also pending before the Court defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 4). Because the instant motion to remand determines whether the Court has subject matter jurisdiction over this action, absent which it is not empowered to rule on the sufficiency of the Complaint, this motion is addressed first. The undersigned has, however, considered arguments raised in the submissions on the motion to dismiss to the extent they relate to federal law preemption.

## I.    BACKGROUND

The basic facts alleged in the Complaint are as follows.  Plaintiff, a New Jersey resident, commenced employment with defendant Silgan Containers Manufacturing Corporation ("Silgan") in 2006 as a machinist and millwright.  Plaintiff allegedly sustained a serious, work-related injury at the Silgan plant in Edison, New Jersey during his employment.  Consequently, plaintiff filed for worker's compensation benefits.  He also advised defendant Bryce Bedford, Silgan's plant manager, that he was unable to perform his physical job functions and thus needed medical treatment and medical leave from work.  Plaintiff alleges defendants subsequently harassed and discriminated against him based on his disability, requests for accommodation and application for worker's compensation benefits, culminating in his ultimate termination from Silgan on or about April 1, 2014. (Complaint, ECF No. 1-1 ¶¶ 1-8).

Based on these allegations, plaintiff filed a seven-count Complaint in the Superior Court of New Jersey, Middlesex County, Law Division in September 2015.  All of the plaintiff's claims are brought under the New Jersey Law Against Discrimination ("LAD") or the New Jersey Worker's Compensation Statute.   Count 1 alleges that plaintiff was harassed, discriminated against, denied reasonable accommodation and terminated in violation of the LAD as a result of his disability.  Count 2 asserts that defendants retaliated against plaintiff for seeking worker's compensation benefits, in violation of the New Jersey Worker's Compensation Statute, N.J.S.A. 34:5-39.1.  Count 3 alleges that defendant Bedford and other employees are liable for aiding and abetting Silgan's violation of the LAD.  Count 4 asserts that defendants retaliated against plaintiff in violation of the LAD for requesting reasonable accommodation of his disability.  Count 5 alleges that defendants unlawfully initiated an investigation of plaintiff, and unlawfully imposed discipline and/or attempted to terminate his employment, in retaliation for his seeking worker's

compensation benefits and because of his disability, in violation of the New Jersey Worker's Compensation Statute and the LAD. Count 6 asserts that Silgan's failure to hire or rehire plaintiff was in violation of the LAD and the New Jersey Worker's Compensation Statute. Finally, Count 7 alleges LAD violations against the fictitious John Doe and ABC Corporation defendants. (*See id.*).

Defendants filed a Notice of Removal in this Court in November 2015, basing subject matter jurisdiction upon a federal question, pursuant to under 28 U.S.C. § 1331. (Notice of Removal, ECF No. 1). Defendants assert that, although no federal claims are pleaded in the Complaint, plaintiff's claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"), which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." LMRA § 301, 29 U.S.C. § 185(a). Defendants aver that plaintiff's employment was governed by a collective bargaining agreement ("CBA") between Silgan and plaintiff's union, the United Steelworkers. (*See* Notice of Removal, ECF No. 1 ¶ 4 & Exh. B). Because they contend that interpretation of that CBA will be necessary to adjudicate plaintiff's state law claims under the LAD and Worker's Compensation Statute, they argue that plaintiff's claims are preempted by the LMRA.

Both sides acknowledge that prior to filing this lawsuit, plaintiff and his Union pursued a grievance against Silgan under the CBA. On May 21, 2013, the day after Silgan advised plaintiff of its decision to terminate his employment, the Union commenced the grievance on plaintiff's behalf, contending that plaintiff's termination was without the "just cause" required by the CBA. (*Id.* ¶ 11). Notwithstanding that plaintiff had been terminated by Silgan, he continued working at

the Silgan plant pending the outcome of his grievance under the CBA's Justice and Dignity clause, which the Union had invoked on his behalf.[2]  (*Id.*).

Plaintiff's grievance was arbitrated on January 8, 2014 before arbitrator Michael D. Gordon.  (Notice of Removal, ECF No. 1 ¶ 12).  The sole stipulated issue for the arbitrator's determination was whether "Grievant [was] discharged for just cause."  (Arbitration Award, ECF No. 1-3 at ECF p. 3).  "Just cause" was the standard required for discharge of a Union member under Article 4 of the CBA.  (*See id.* at ECF p. 5) ("the Company shall . . . suspend or discharge for just cause").  On March 26, 2014, the arbitrator issued his eighteen-page written decision, finding that "Grievant was discharged for just cause."  (*Id.* at ECF p. 19).  Defendants contend that this labor arbitration and its analysis of the parties' rights under the CBA must be analyzed to adjudicate the instant lawsuit, preempting plaintiff's claims under the LMRA.

## II.    DISCUSSION

### A. Summary of The Motion

Plaintiff moves to remand this action to the Superior Court of New Jersey on the grounds that this action presents exclusively state law causes of action between parties who do not satisfy the diversity of citizenship requirements of 28 U.S.C. § 1332.  Plaintiff disputes that defendants had the right to remove this action as presenting a federal question under 28 U.S.C. § 1331 by virtue of LMRA preemption, asserting that adjudication of his LAD and worker's compensation claims do not require interpretation of the CBA or present any other federal question.

---

[2]    The "Justice and Dignity" clause provides that "[a]n employee whom the Company suspends or discharges or whom it contends has lost his/her seniority under Article 12, Section 5 of the Master Agreement or Article 11 of the applicable Local Supplemental Agreement shall be retained at or returned to active work until any grievance contesting such suspension, discharge or break in service question is finally resolved through the grievance and arbitration procedure." (*CBA*, Section 9, ECF No. 1-2 at ECF p. 27).

Defendants, on the other hand, argue that this lawsuit is essentially an impermissible reargument of the labor arbitration and its construction of the CBA, and that plaintiff's claims therefore are preempted by the LMRA. They contend that plaintiff's claims cannot be adjudicated without revisiting the labor arbitrator's interpretation of the CBA or without the Court's interpreting the CBA. Therefore, according to defendants, LMRA preemption arises and plaintiff's action presents a federal question supporting the assertion of subject matter jurisdiction under 28 U.S.C. § 1331.

This Court, after careful analysis, disagrees with defendants' arguments and concludes that plaintiff's rights under state law may be adjudicated without considering the arbitrator's decision or any term of the CBA, except perhaps by way of considering defenses presented by defendants. This action, therefore, is not preempted by the LMRA under well-settled, binding precedent and should be remanded to the Superior Court of New Jersey for lack of subject matter jurisdiction.

### B. Legal Standards

When a party moves to remand an action to state court based on a lack of subject matter jurisdiction, the burden is on the party asserting federal jurisdiction and opposing remand to demonstrate that the case is properly before this Court. *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). Removal statutes are "strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir.1985).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[U]nder the well-pleaded complaint rule, where a plaintiff's complaint

on its face states only state law causes of action, the fact that issues of federal law may be involved, as in the nature of a defense, will not suffice to create federal question jurisdiction." *Carrington v. RCA Global Commc'ns, Inc.*, 762 F. Supp. 632, 636 (D.N.J. 1991).

An "independent corollary" to the well-pleaded complaint rule is the "complete preemption doctrine." *Caterpillar*, 482 U.S. at 393. This arises when the Court has concluded that the preemptive force of a statute "is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987)) (internal quotation marks omitted). One such area where this doctrine is applied is in cases that raise claims, which would otherwise be governed by state law, that are preempted by § 301 of the LMRA. This Court has instructed "that any civil complaint raising this select group of claims is necessarily federal in character." *Carrington*, 762 F. Supp. at 636. The policy reason for the LMRA preemption is to further the "interests in interpretive uniformity and predictability [of] questions relating to what the parties to a labor agreement agreed." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985).

LMRA preemption power, while thus intended to be applied broadly, is not unlimited. "[I]t would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212. Only state law claims that are "inextricably intertwined" with terms of a labor contract are preempted by § 301. *See Carrington*, 762 F. Supp. at 640. Therefore, the Supreme Court and this Court both have held that discrimination claims and retaliatory discharge actions are typically not preempted by the LMRA, even when the terms of a CBA are relevant to resolution of the discrimination claims. *See, e.g., Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988); *LaResca v. Am. Tel. & Tel.*, 161 F. Supp. 2d 323, 330 (D.N.J. 2001).

6

**C. Analysis**

Defendants argue that this action is preempted by the LMRA because it amounts to an appeal of the arbitration decision that found just cause for plaintiff's termination and, as such, is "inextricably intertwined" with the terms of the CBA. Their specific preemption arguments can be grouped into three categories: (1) that this lawsuit will require the Court to reexamine the same issues decided by the arbitrator; (2) that whether plaintiff's termination was unlawful will require the Court to scrutinize the arbitrator's decision because it was he who "effectuated" plaintiff's termination; and (3) that the adjudication of plaintiff's claims and any remedy of reinstatement those claims may provide would require the Court to determine whether the arbitration was "final and binding" under the CBA such that there would be no judicial forum available to plaintiff nor any right of reinstatement if he prevails on his claims.  The Court addresses each argument in turn below.

*1.    Whether This Action Requires Reexamination of the Labor Arbitration Or Substantial Interpretation of the Terms of the CBA*

Defendants argue that this action will require the Court to reexamine issues decided by the labor arbitrator, which in turn requires interpretation of the terms of the CBA.  They contend that plaintiff's claims of disability discrimination under the LAD and Worker's Compensation retaliation will necessitate the Court's reexamining the arbitrator's conclusion that there was "just cause" for plaintiff's termination under the CBA.  Defendants further posit that plaintiff's allegation that they violated state anti-discrimination and anti-retaliation laws by performing surveillance of him while he was on leave requires the Court to revisit the arbitrator's conclusion that the surveillance was not improper.  Finally, defendants assert that the arbitrator already has ruled that plaintiff's termination was not motivated by discrimination, and therefore the Court will need to examine the basis for the arbitrator's decision.  Defendants' overarching argument is that

7

plaintiff's omission of mention of the labor arbitration in the Complaint is "artful pleading" designed to mislead the Court into concluding that the CBA is not at issue in this action.

The majority of defendants' arguments confuse the "parallelism" of plaintiff's state law claims and the arbitrated "just cause" determination under the CBA with the "inextricably intertwined" standard under which the Court determines LMRA preemption. But it is well recognized that labor arbitrations under a CBA and state law discrimination claims in a court often involve an identical set of facts, which must be analyzed under different legal standards. While the former requires an arbitrator to apply the contractual provisions of a CBA in rendering a decision, the latter often requires no interpretation of a CBA. It is only if the CBA must substantially be construed to adjudicate plaintiff's state law claims that the claims are considered "inextricably intertwined" with a labor contract and hence preempted by the LMRA.

The Supreme Court explicitly has rejected the argument presented here that state law discrimination claims are preempted by the LMRA simply because they are based on facts that already were arbitrated pursuant to a CBA. "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *See Lingle*, 486 U.S. at 409-10. The late District Judge Dickinson R. Debevoise of our Court applied this rule in *Carrington*, finding that a plaintiff's discrimination claims were not preempted by the parallelism of facts that would be analyzed under the LAD and also had been analyzed under the "just cause" standard of a CBA. *See Carrington*, 762 F. Supp. at 640.

No interpretation of the CBA and no analysis of the arbitrator's decision under the CBA is necessary to adjudicate plaintiff's state law claims here. Plaintiff's claims that Silgan violated the

8

LAD's prohibition of disability discrimination and engaged in worker's compensation retaliation will turn on the state law standards for resolving those claims, which will examine factually the conduct of plaintiff and the motivation of defendants in making the termination decision.  For instance, to prove his worker's compensation retaliation claims, plaintiff must prove he attempted to file for workers' compensation benefits and was discharged in retaliation for seeking such benefits.  *See Morris v. Siemens Components, Inc.*, 928 F. Supp. 486, 493 (D.N.J. 1996).  To establish his LAD disability discrimination claim, plaintiff essentially will have to prove that he was terminated because of his disability or perceived disability, despite meeting his employer's legitimate performance expectations.  *See Bell v. KA Indus. Servs.*, LLC, 567 F. Supp. 2d 701, 706 (D.N.J. 2008); *Jansen v. Food Circus Supermarkets, Inc.*, 110 N.J. 363, 382, 541 A.2d 682, 692 (1988).

Despite defendants' assertions to the contrary, the arbitrator did not analyze whether Silgan's termination decision was motivated by disability discrimination proscribed by the LAD or worker's compensation retaliation prohibited by New Jersey's Worker's Compensation Statute. Nor did the arbitrator determine whether the surveillance of plaintiff while on medical leave was illegal under the LAD or the New Jersey Worker's Compensation Statute.  The arbitrator determined solely the stipulated issue of whether the plaintiff was terminated with "just cause" under Article 4 of the CBA. (*See* Arbitration Award, ECF No. 1-3 at ECF pp. 3, 19).  In making that determination, the arbitrator stated that "the Company must prove (1) misconduct occurred and, under all relevant circumstances, (2) the discipline imposed is proportionate to the offense." (*Id.* at ECF p. 13).  Thus, the arbitrator employed a legal analysis entirely distinct from that required for plaintiff to prove his state law causes of action here.  There is no need in this action for a court to review, as the labor arbitrator did, whether plaintiff was terminated for "just cause"

as required by the CBA.  His determination is irrelevant to this action.  As stated above, the focus on plaintiff's state law claims will be on the plaintiff's conduct and the employer's motivation for its termination decision.  The contractual "just cause" standard in the CBA is not part of that analysis in any respect.  The LAD and the Worker's Compensation statute provide their own standards, and the facts relating to plaintiff's termination will be analyzed under those separate legal standards.

To the extent that defendants argue that plaintiff engages in improper "artful pleading" in order to "plead around" the arbitration and the terms of the CBA, they ignore the oft-stated principle that the plaintiff is master of his Complaint.  Plaintiff properly may choose, as here, not to assert claims based on rights under the CBA.  As the "master of the complaint," plaintiff deliberately may avoid federal jurisdiction by exclusive reliance on state law.  *Caterpillar*, 482 U.S. at 392, 398-99.  Plaintiff has chosen in this action to allege only violations of state law rights, and such claims are both beyond the scope of the arbitrator's authority and independent of whether defendants' had "just cause" to terminate plaintiff under the CBA.  The arbitrator's "just cause" inquiry is distinct from the Court's analysis of state retaliation and discrimination claims, and the arbitrator's ultimate "conclusion might or might not be consistent with a proper interpretation of state law."  *Lingle*, 486 U.S. at 413.  That is why this Court has held repeatedly that "[s]tate discrimination laws are generally not preempted by federal labor law."  *LaResca*, 161 F. Supp.2d at 330 (WGB); *accord Carrington,* 762 F. Supp. at 641-42; *Bull v. United Parcel Service, Inc.*, Civ. No. 07-2291 (KM), 2014 WL 2965696, at *14 (D.N.J. July 1, 2014).

Therefore, the Court finds unconvincing defendants' arguments that plaintiff's state law claims are "inextricably intertwined" with either the terms of the CBA or the arbitrator's decision that there was "just cause" under the CBA for Silgan to discharge plaintiff.  The Court's need to

10

examine similar facts in this lawsuit to those the arbitrator examined during the labor arbitration is irrelevant to LMRA preemption.  It is only when the Court necessarily must interpret the CBA in order to resolve a claim that that claim is preempted.  That is not the case here.

### 2. *Whether The Arbitrator's Decision Effected Plaintiff's Termination*

Defendants next argue that the determination of whether there was a discriminatory motive for plaintiff's termination under state law necessitates examination of the arbitrator's rationale for his just-cause award.   According to defendants, resolution of plaintiff's state law claims may require determination of whether "Arbitrator Gordon had a discriminatory motive for terminating Plaintiff's employment" because defendants contend that the arbitration award "preceded and effectuated Plaintiff's termination of employment."  (ECF No. 15 at ECF pp. 11, 14).

This argument is unconvincing to the Court, as it is based on an inaccurate premise.   In order to make this argument, defendants implicitly cast the arbitrator, rather than Silgan, as the decision maker with respect to plaintiff's discharge from employment.   This is a mischaracterization of the facts.

As defendants are constrained to admit in certain of their submissions to the Court, *Silgan – not the arbitrator-* made the decision to terminate plaintiff's employment and informed him of that decision on May 20, 2013.  (ECF No. 4-1 (Def. Mem. In Support of Motion To Dismiss) at ECF p. 8 ("On May 20, 2013, . . [*defendant] Bedford decided to terminate Plaintiff's employment* . . . . On May 21, 2013, the Union filed a grievance on behalf of Plaintiff, alleging that Silgan *had terminated* Plaintiff's employment without just cause.") (emphasis added).  This occurred several months before the arbitrator issued his March 26, 2014 written award.  Indeed, it was the May 20, 2013 decision of Silgan to terminate plaintiff's employment that caused plaintiff's Union to commence the grievance process in the first place.  (*See id.*).

11

There is no doubt that the arbitrator was determining whether the decision Silgan *already had made* to terminate plaintiff's employment was supported by just cause under the CBA. The arbitration award cites the parties' stipulated issue to be decided at arbitration as: "*Was* Grievant discharged for just cause" (ECF No. 1-3 at ECF p. 3) (emphasis added), with the discharge being described in the past tense. The arbitration decision recounts that "[defendant Bryce] Bedford decided to terminate [plaintiff] . . . . [and] [t]he Company announced its decision at a May 20 meeting with [plaintiff] and the Union." (*Id.* at ECF p. 9). Moreover, the arbitrator's decision on the stipulated arbitration issue was that "Grievant *was discharged* for just cause" (*id.* at ECF p. 19) (emphasis added), once again phrased in the past tense. The arbitrator indisputably was examining a termination decision already made by Silgan, not one that he was being asked to make as arbitrator.

In making their argument that it was the arbitrator, in effect, who terminated plaintiff's employment, Defendants seek to exploit the confusion that arises from plaintiff's having continued to work at Silgan until the arbitrator issued his award. But it is undisputed that plaintiff was allowed to continue to work at Silgan only because his Union had invoked that right under the CBA's "Justice and Dignity" clause. That clause permits *discharged* employees to continue working pending the outcome of a grievance proceeding. (CBA, Section 9, ECF No. 1-2 at ECF p. 27) ("An employee whom the Company . . . discharges . . . shall be retained at or returned to active work until any grievance contesting such . . . discharge . . . is finally resolved through the grievance and arbitration procedure."). Thus, plaintiff's continuing to work at Silgan under the Justice and Dignity clause was akin to a Court's stay of an Order pending appeal. The maintenance of the *status quo* pending the outcome of arbitration did not mean that Silgan had not discharged plaintiff, any more than a stay of a Court's Order means that the Court did not render the decision

12

reflected in that Order. The invocation of the Justice and Dignity clause simply stayed the effect of the termination decision that Silgan had made until after the arbitrator could decide whether or not to reverse that decision.

Although plaintiff alleges in the Complaint that he was terminated on April 1, 2014, a few days after the arbitration award, his counsel explained at oral argument that the pleading avers that the termination occurred on April 1 because that is when plaintiff knew he would not be reinstated because he had lost the arbitration; thus, in the view of plaintiff's counsel, that is when plaintiff's claims accrued under the statute of limitations. (ECF No. 20 at 16). Certainly, there is nothing to indicate that plaintiff alleged a post-arbitration termination date because he plans to contend that the arbitrator made the termination decision. As in any LAD or retaliation case, plaintiff will seek to prove that the *employer's* motivation for the termination was discriminatory and/or retaliatory, not that the arbitrator improperly terminated his employment. Therefore, plaintiff's state law claims will not involve examination of the arbitrator's "just cause" decision but rather *Silgan's* reason for terminating his employment. The Complaint plainly focuses on Silgan's and its managers' discriminatory motive for his termination; it nowhere mentions any involvement of Arbitrator Gordon in his termination. (*See* Complaint, ECF No. 1-1). As such, plaintiff's state law claims will not require examination of the arbitrator's "just cause" decision because that is not the termination decision that will be at issue on plaintiff's claims. Therefore, the Court rejects the argument that the arbitrator's decision and its construction of the CBA are "inextricably intertwined" with the claims in this lawsuit.

### 3. *Whether This Action Requires Construction of The CBA's "Final and Binding" Provision*

Finally, defendants argue that plaintiff's claims will require an interpretation of the CBA's provision that "[t]he decision of the Arbitrator shall be final and binding on the Company, the

Union and the employee or employees involved." (CBA, ECF No. 1-2 at ECF p. 24).  Defendants apparently contend that the CBA's "final and binding" language constitutes a waiver of plaintiff's right to pursue his claims in a judicial forum.[3]

Defendants' argument does not provide a basis for this Court to find that plaintiff's claims are preempted by the LMRA.  It ignores that the only manner in which the CBA's "final and binding" provision will be raised in this action is by way of defendants' assertion of it as a defense to plaintiff's state law claims.  But the law is unambiguous that arguments based on the CBA's terms that are presented only by way of defense do not result in LMRA preemption.   In fact, federal jurisdiction *cannot* be established by a federal defense, even if the defense is anticipated in the plaintiff's Complaint.  *See Caterpillar*, 482 U.S. at 393 (emphasis added); *accord New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014); *Carrington*, 762 F. Supp. at 636.

The Supreme Court set this forth explicitly in *Caterpillar*, where it observed the following:

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives.  But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has chosen to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant

---

[3]     Defendants make this argument in their motion to dismiss. (See, e.g. ECF No. 4-1, at ECF pp. 13-14).  Resolution of this defense is for the court that ultimately has subject matter jurisdiction over this action, which the undersigned concludes is the Superior Court of New Jersey.  Therefore, the Court does not address the merits of this defense, although it notes that the Supreme Court's decisions in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) and *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) do not appear to support a finding of waiver of judicial rights here.

could do so, the plaintiff would be master of nothing. **Congress has long since decided that federal defenses do not provide a basis for removal.**

*Caterpillar*, 482 U.S. at 398-99 (emphasis added). Following this clear and binding principle of law, this Court has on numerous occasions found that CBA provisions invoked by way of defense do not result in LMRA preemption. *See Sharkey v. Verizon New Jersey Inc.*, Civ. No. 14-2788 (JLL), 2015 WL 1735497, at *5 (D.N.J. Apr. 16, 2015) (finding no LMRA preemption where analysis of labor agreement would arise only by way of defense); *Sealy v. Verizon Commc'ns, Inc.*, Civ. No. 13-7461 (CCC), 2014 WL 7331950, at *3 (D.N.J. Dec. 15, 2014) (noting that "[d]efendants cannot trigger Section 301 preemption simply on the basis that they may defend against Plaintiff's state law claims by invoking the CBA"); *McKeown v. Verizon New Jersey Inc.*, Civ. No. 12-5080 (WJM) (MF), 2012 WL 5504866, at *2 (D.N.J. Nov. 8, 2012) (same), *report and recommendation adopted by*, Civ. No. 12-5080 (WJM), 2012 WL 5989468 (D.N.J. Nov. 27, 2012). Because any examination of the "final and binding" language of the CBA would be necessary only in considering defendants' defenses to plaintiff's state law claims, the Court does not find this to provide a basis for LMRA preemption.

\* \* \*

The Court concludes that the Complaint is comprised of purely state law claims that may be litigated without interpreting the CBA between Silgan and plaintiff's Union. Therefore, this lawsuit falls squarely within the line of cases in this Court where "the right not to be discriminated against is defined and enforced under state law without reference to the terms of any collective bargaining agreement." *Carrington*, 762 F. Supp. at 641 (internal quotation marks omitted); *see also Bull*, 2014 WL 2965696, at *13 (holding LAD claims not preempted where CBA merely relevant in resolving issues in case); *LaResca*, 161 F. Supp. 2d at 329-30 (finding prima facie showing under LAD raised "purely factual questions" that did not require interpreting seniority

provision of CBA).  Because resolution of plaintiff's claims is not "inextricably intertwined" with the terms of the CBA, the Complaint is not preempted by the LMRA.  Therefore, this Court lacks subject matter jurisdiction over this action.

### III.    CONCLUSION

For the reasons set forth above, this Court respectfully recommends that plaintiff's motion to remand this action to the Superior Court of New Jersey be **GRANTED**.

Dated:  May 3, 2016

**Leda Dunn Wettre**
**United States Magistrate Judge**

Original:     Clerk of the Court
   cc:        Hon. Madeline C. Arleo, U.S.D.J.
              All Parties